

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| CHICAGO UNION STATION COMPANY, an Illinois corporation, and NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK, a District of Columbia corporation,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL PROPERTY DEVELOPERS NORTH AMERICA, INC., a Delaware corporation,<br><br>Defendant. | No. 12 CV 00770 |

## CONSENT DECREE

### I. FINDINGS

1. Plaintiff National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak") was authorized to be created by the United States Congress pursuant to the National Rail Passenger Service Act, 49 U.S.C. § 24101 *et seq.* to provide, among other things, intercity and commuter rail transportation to meet the intercity and commuter passenger transportation needs of the United States.

2. Chicago Union Station Company ("CUSCO"), a wholly owned subsidiary of Amtrak, owns and operates the Chicago Union Station, in Chicago Illinois ("Union Station"), including the approach tracks.

3. Union Station serves the transportation needs of Amtrak and other passenger rail transportation entities which operate in the Chicago, Illinois region.

4. CUSCO's initial design for Union Station in 1925 included platform sheds that covered the approach tracks, which platform sheds allowed for locomotive smoke, exhaust and soot to rise harmlessly through openings located over the tracks.

5. By deed dated June 19, 1931 ("Deed"), CUSCO conveyed the property, commonly known as 404-30 West Harrison Street/433 West Van Buren Street, Chicago, Illinois, to the United States for the purpose of building a United States Post Office in Chicago (hereafter the "Old Chicago Post Office").

6. In the Deed, CUSCO expressly reserved for itself and its successors and assigns a permanent and perpetual easement below a plane seventeen (17) feet above the top of the rail of the existing tracks (hereinafter the "Easement Area").

7.  In addition to the Deed, CUSCO and the United States entered into an Agreement in connection with the Deed (hereinafter the "Easement"), which is recorded in the Cook County Recorder of Deeds as Document Number 0925410070.

8.  Paragraph 4 of the Easement required, among other things, the United States to "include in its proposed building or buildings and thereafter maintain and operate at its own expense an adequate system of ventilation to remove the smoke, fumes and gases emitted from steam locomotives, gas engines or other engines or appliances, such as shall be agreed upon between the Chief Engineer of the Station Company and the Supervising Architect of the Treasury Department of the United States."

9.  Paragraph 14 of the Easement provides that "[a]ll the terms, covenants, conditions, and provisions of this agreement shall be binding upon and enure to the benefit of the parties hereto, and their respective successors and assigns; and wherever in this agreement reference is made to either of the parties hereto it shall be held to include and apply to, wherever and whenever applicable, the successors and assigns of such party with like effect as if in each and every case so expressed . . . ."

10. Since the opening of the Old Chicago Post Office in 1932 until its sale in 2009, CUSCO and the United States Postal Service (the "USPS") enjoyed an amicable relationship, and the USPS complied with its obligations under the Easement, including the installation, maintenance and operation of a ventilation system at USPS's expense.

11. The USPS placed the Old Chicago Post Office for sale by auction in 2009.

12. International Property Developers North America, Inc. ("IPDNA"), a development company, acquired the Old Chicago Post Office from USPS in the 2009 auction for approximately $24.8 million pursuant to a special warranty deed ("Special Warranty Deed"), which is expressly subject to the terms and conditions contained in the Easement.

13. IPDNA has since submitted plans to the City of Chicago to redevelop the Old Chicago Post Office into residential, office and hotel space.

14. CUSCO and Amtrak filed the above-captioned lawsuit against IPDNA seeking to, among other things, enforce the terms of the Easement, and IPDNA filed counterclaims against CUSCO for alleged damages (the "Lawsuit").

## II. DECREE

It is hereby ORDERED, ADJUDGED and DECREED:

1.  The Easement is valid, binding and enforceable against IPDNA and its successors and assigns, and is expressly incorporated into this Consent Decree by reference.

2.  IPDNA shall immediately comply in all respects to the terms and conditions set forth in the Easement and this Consent Decree.

3. In place of the Supervising Architect of the Treasury Department of the United States referenced in Paragraph 4 of the Easement (Findings, *supra*, ¶ 9), IPDNA shall designate an engineer from a reputable and independent engineering firm acceptable to CUSCO ("IPDNA's Designated Engineer").

4. The current ventilation system at the Old Chicago Post Office, which consists of eleven (11) exhaust fans, shall operate to provide ventilation seven (7) days a week, twenty-four (24) hours a day, unless otherwise agreed to in writing by CUSCO's Chief Engineer, IPDNA's Designated Engineer and the Commissioner of Buildings of City of Chicago, Illinois. Upon prior notice to IPDNA, CUSCO's Chief Engineer shall have the right to inspect the ventilation system at the Old Chicago Post Office each quarter of the year to ensure compliance with the Easement and this Consent Decree.

5. The parties shall each voluntarily dismiss their respective claims and counterclaims, including those for damages, in the Lawsuit. Dismissal of CUSCO's and Amtrak's declaratory relief and specific performance claims shall be without prejudice, and their breach of contract and nuisance claims seeking money damages shall be with prejudice. Dismissal of IPDNA's Counterclaims shall be with prejudice and accompanied by a general release of all claims, known or unknown, asserted or unasserted, against CUSCO, Amtrak or both from the beginning of time through the date of this Consent Decree. Each party shall bear its own attorneys' fees and costs to date.

6. This Consent Decree may be enforced by an action for specific performance, which is in addition to any other cause or remedy that CUSCO, Amtrak or both may have at law or in equity (including, without limitation, a claim for damages). This Consent Decree may be recorded with the Cook County Recorder of Deeds.

7. The prevailing party(ies) shall be entitled to recover its(their) attorneys' fees, costs and expenses in any action to enforce the terms of this Consent Decree, the Easement or both.

8. The United States District Court for the Northern District of Illinois, Eastern Division, shall retain jurisdiction over this matter for the limited purpose of enforcing the terms of this Consent Decree.

Dated: April 17th, 2013.

ENTER:

United States District Judge
HARRY D. LEINENWEBER

**[PARTY SIGNATURES APPEAR ON THE FOLLOWING PAGE]**

ACKNOWLEDGED AND AGREED TO AS TO FORM:

By: /s/ Chad Schiefelbein

Chad A. Schiefelbein
Joshua A. Dunn
Vedder Price P.C.
222 North LaSalle Street, Suite 2600
Chicago, Illinois 60601-1003
(312) 609-7500

*Attorneys for Plaintiffs Chicago Union Station Company and National Railroad Passenger Corporation d/b/a Amtrak*

Dated: April 12, 2013.

By: /s/ David Buetow

David R. Buetow
Scott A. Nehls
Fuchs & Roselli, Ltd.
440 West Randolph Street
Suite 500
Chicago, Illinois 60606

*Attorneys for Defendant International Property Developers North America, Inc.*

Dated: April 11, 2013.